Minshall, J.
This statute, we think, is invalid on several grounds. 1. It is an assumption of powers over the affairs of a county not pos *339 sessed by the general assembly — it is administrative in character and not legislative. The act authorizes the commissioners of Hamilton county to widen, extend and improve the Paddock road from its present southern terminus to the northern corporation line of the village of Glendale in Hamilton county, in a specific manner. It would have been more properly designated, if it had been entitled, an act to widen, extend and improve the road as therein directed, with the approval of the commissioners of Hamilton county. All the authority conferred on the commissioners is to adopt the plan and carry it into execution. The title of the act is in fact, mandatory; and the act was evidently framed 'with that fact in view, but was afterward so changed as to make its execution subject to the authorization of the commissioners. The act prescribes the width of the road, the land that must be appropriated on each side to secure the width, except in the village of Glendale where the width is to remain as it is; it prescribes the grade of the road and the precise manner in which it is to be made: “On its subgrade, the crown of which shall be ten inches in the center and thoroughly rolled, shall be placed a layer of flat stones to a depth of not less than four inches, and the interstices filled up with broken stone, well rammed. On this shall be placed a layer of not less than five inches thick, of crushed or broken limestone and thoroughly rolled. This shall be covered by two layers each of two and one-half inches of crushed boulder or granite of the size to pass through a two and one-half inch ring; each layer to be separately rolled, and on this shall be placed a top *340 dressing of screenings of boulder or granite, not less than one and one-half inch thick, which shall also be thoroughly rolled.”
One-half of the cost and expenses are to be levied on the general taxpayers of the county, and the other half is to be assessed on the lands and lots lying on both sides of the road and the ends thereof, within the distance of one mile, to be apportioned according to benefits by a commission to be appointed for that purpose. To meet the expenses in the first instance, the bonds of the county are to be issued and sold in an amount not to exceed the sum of $400,000. All this is to be done if the commissioners act at all, without the petition of a single person, interested or otherwise, although the costs and expenses may amount to the sum of $400,000, to be raised as above stated. Is the enactment of this law the fair exercise of legislative power? We think not. It is simply a usurpation of the powers heretofore always allowed to the proper administrative boards selected by the people of the localities concerned in the exercise of the right of local self-government; and always called into activity on the petition of, at least, a majority of those interested, not only in the benefits, but also in the costs and expenses of the improvement. This is shown in the road improvement laws of the state, under the one and two-mile systems, the ditch and levy laws, and the laws regulating the improvement of streets and alleys in municipal corporations.
The system of local self-government existed under general laws at the adoption of the present constitution; and there is nothing in it, nor in any of its provisions, from which a design can be in *341 f erred to many way impair it; on the contrary every provision of that instrument, in any way related to the subject, manifests a purpose to preserve it unimpaired to the people. This appears in the provisions for the election of county and township officers by the people. Article 10, Constitution; who had theretofore always exercised these functions, at the instance of the parties concerned; and have always since done so, until within the last few moons. Commenting on the general features of a written constitution, Judge Cooley observes: “Lo,cal self-government having always been a part of the English and American systems, we shall look for its recognition in any such instrument. And if not expressly recognized, it is still to be understood that all these instruments are framed with its present existence and anticipated continuance in view.” Constitutional Limitations, 45.
If it is competent to the general assembly to authorize the commissioners of Hamilton county by a special act to make such an improvement in that county, without the request of any one interested, then the same may be done in any county of the state, irrespective of the resources of the county, or of the ability of those who will be compelled to pay the large assessments made on their lands to meet the costs and expenses of the improvement. This is a wide departure from the principles of local self-government; and so wide, it is not possible to sustain it by any latitude of construction. It is true that, under this statute, the improvement must be authorized, or more properly approved, by the commissioners, which may be said to be some protection against the improvidence of the legislature. But, as already shown, when they act, they must proceed in the *342 way and to the extent, mapped out by the legislature. The people interested have no control, and they are deprived of the initiative in the matter, which is the important point in the privilege of local self-government.
The fact that parties interested may be heard before a committee of the legislature, is not the equivalent of the right to be heard before the proper local board, where all may be heard and their objections considered, with little or no inconvenience or expense. Nor can the fact that, as stated by counsel the parties were heard in this case, make any difference. By the act no application or hearing of any kind is required; the commissioners may act sua aponte.
2. It is a special act conferring corporate power upon certain municipal corporations. The petition avers that the Paddock road and its proposed extensions will pass into or through the villages of Bond Hill, Carthage, Wyoming, Glendale and Avondale, in Hamilton county; and it is provided in section 7 of the act, that theocommissioners and the council ‘ ‘of any village owning any part of the lands necessary to be acquired for the purpose of carrying’ out the provisions of this act are hereby authorized to dedicate the same free of costs to the county.” This is a power not possessed by other villages of the state and is conferred on them by a special act. Under it they may so dedicate their streets to the county, and thereby relieve themselves from the duty of keeping them open, in repair and free from nuisances, as other villages are required to do. Here are two express powers conferred on these villages: One is to dedicate their property to the county, and the other is to relieve themselves from duties enjoined on other villages *343 in regard to their streets and alleys. But it is suggested that the power here conferred is not essential to the plan, and may be disregarded without affecting the g’eneral provisions of the act. We do not adopt this view. The power intended to be conferred is the extension and improvement of a particular road according to a prescribed plan. To improve and extend it to and beyond these villages, or any of them, and not through them, would be a departure from the plan for which there is no authority in the act. It would be to adopt the plan in part and reject it in part, without anything in the act to warrant the court in saying that the one part is less material than the other; or that the legislature would have authorized a part of the improvement to be made without the whole. A material consideration may have been the making of the improvement through these villages. The act for this additional reason is invalid. Commissioners v. State ex rel., 50 Ohio St., 653.
There is still another ground on which this statute is, in my opinion, clearly invalid. The location and construction of public roads is a subject of a general nature, and should, therefore, be regulated by general laws, uniform in operation throughout the state. Const., article 2, section 26. And have always until recently been so treated. Cases may arise in which the peculiar circumstances may require special legislation of a local character. It may happen that a bridge is carried away by a flood, or that a court-house is destroyed by Are, and that under, existing laws, there is no power to meet the emergency thus created. Such circumstances create of themselves a special subject of legislation, growing out of the emergency, and are excepted by the law of reason out of the gen *344 eral rule upon the subject; or, more properly speaking, presenting, as they do, a special subject for legislation do not fall within the rule.
But as this question is presented in a number of cases now pending in this court, it is not now passed on by the court; nor are my associates in any way bound by what is here said. The points decided are expressed in the syllabus.
Judgment reversed, and judgment rendered for the plaintiffs.